**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GUY CARPENTER & COMPANY, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:22-cv-01819-X** |
| | § | |
| **HOWDEN REINSURANCE BROKERS** | § | |
| **LIMITED, HOWDEN REINSURANCE** | § | |
| **BROKERS (US) LLC** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS HOWDEN REINSURANCE BROKERS LIMITED AND**
**HOWDEN REINSURANCE BROKERS (US), INC.'S**
**<u>BRIEF IN SUPPORT OF MOTION TO DISMISS</u>**

Ann Marie Arcadi
State Bar No. 00786994
annmarie.arcadi@arcadijackson.com
T. Gregory Jackson
State Bar No. 24004718
greg.jackson@arcadijackson.com
John M. Farrell
State Bar No. 24059735
john.farrell@arcadijackson.com

ARCADI JACKSON, LLP
2911 Turtle Creek Blvd., Suite 800
Dallas, Texas 75219
Telephone: 214-865-6458
Facsimile: 214-865-6522

**ATTORNEYS FOR DEFENDANTS**
**HOWDEN REINSURANCE BROKERS LIMITED AND**
**HOWDEN REINSURANCE BROKERS (US), INC.**

## TABLE OF CONTENTS

I.   SUMMARY ....................................................................................................1

II.  LEGAL STANDARD .......................................................................................3

III. ARGUMENTS AND AUTHORITIES ............................................................3

A.   **Count 1 - Plaintiff's Tortious Interference Claims are Speculative and Fail as a Matter of Law**..................................................................................................3

    1.   TUTSA preempts Plaintiff's tortious interference claim relating to Howden's alleged interference with the Departing Employees' contractual obligations to not use/disclose, and to return, Guy Carpenter's confidential business information.....4

    2.   Plaintiff's claims of tortious interference relating to Howden's alleged interference with the Departing Employees' contractual obligations not to solicit Guy Carpenter employees fail for lack of a valid contractual obligation..........................................5

    3.   Plaintiff's claims of tortious interference relating to Howden's alleged interference with the Departing Employees' contractual obligations not to solicit certain Guy Carpenter clients fail because the allegations are rank speculation unsupported by any factual allegation ................................................................................................7

B.   **Count 2 - Plaintiff Fails to State a Knowing Participation in Breach of Fiduciary Duty Claim** ............................................................................................................9

    1.   Plaintiff's Complaint largely describes a group of employees lawfully exercising their right to explore potential employment with a competitor – not any breaches of fiduciary duty ............................................................................................................10

    2.   Plaintiff's Complaint allegations that Howden participated in any activities by the Departing Employees to misappropriate Guy Carpenter business opportunities are rank speculation unsupported by any factual allegation .........................................12

C.   **Counts 3 and 4 – Plaintiff Fails to State its TUTSA/DTSA Claims**...........................12

    1.   Plaintiff fails to identify the trade secret information allegedly misappropriated .13

    2.   Plaintiff fails to allege reasonable efforts to protect its information ....................15

    3.   Plaintiff fails to sufficiently allege that Howden misappropriated any Guy Carpenter information .............................................................................................17

D.   **Count 5 - Plaintiff's Civil Conspiracy Claims Fail as a Matter of Law (Count 5)** ....18

    1.   Plaintiff's conspiracy claim relating to Howden and the Departing Employees' alleged conspiracy to misappropriate Guy Carpenter's confidential business information is preempted by TUTSA .................................................................19

2.      Plaintiff's conspiracy claim relating to Howden and the Departing Employees' alleged conspiracy to breach fiduciary duties fails due to the underlying tort failing ............................................................................................................................20

3.      Plaintiff's conspiracy claim relating to Howden and the Departing Employees' alleged conspiracy to tortiously interfere with contracts fails due to the fact that it is legally impossible for these parties to conspire to tortiously interfere with a contract to which the Departing Employees are a party ........................................20

4.      The entirety of Plaintiff's conspiracy claim fails due to the fact that there is no claim for conspiracy between a principal and its agents .................................................21

IV.     PRAYER ........................................................................................................................21

## TABLE OF AUTHORITIES

CASES                                                                                                          PAGES

*24 SEVEN, LLC v. Martinez*,
    No. 19-cv-7320 (VSB), 2021 WL 276654 (S.D.N.Y. Jan, 26, 2021)..................................9

*Adidas America Inc. v. Shoebacca Ltd.*,
    No. 3:20-CV-03248-N, 2021 WL 4399745 (N.D. Tex. Sept. 27, 2021) ..........................20

*Aguilar v. State Farm Lloyds*,
    No. 4:15-cv-565-A, 2015 WL 5714654 (N.D. Tex. Sept. 28, 2015)................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................3, 8, 12, 18

*BDO Seidman v. Hirshberg*,
    93 N.Y.2d 382 (1999) ....................................................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................3, 8, 12, 18

*Bridges v. Methodist Hospital*,
    No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022)................................3

*Computer Sciences Corp. v. Tata Consultancy Services Limited*,
    No. 3:19-cv-970-X(BH), 2020 WL 2487057 (N.D. Tex. February 7, 2020) ....3, 13, 16, 19

*D'Onofrio v. Vacation Publications*,
    888 F.3d 197 (5th Cir. 2018) .................................................................10, 11, 12

*Embarcadero Techs., Inc. v. Redgate Software, Inc.*,
    No. 1:17-CV-444-RP, 2018 WL 315753 (W.D. Tex. Jan. 5, 2018)..............................5, 19

*Flex Frac Logistics, LLC v. NLRB*,
    746 F.3d 205 (5th Cir. 2014) .................................................................15, 16

*Guy Carpenter & Co., Inc. v. Provenzale*,
    334 F.3d 459 (5th Cir. 2003) .........................................................................15

*Holloway v. Skinner*,
    898 S.W.2d 793 (Tex. 1995)..........................................................................20

*In re Document Techs. Litigation*,
    275 F. Supp. 3d 454 (S.D.N.Y. 2017)...............................................................6

*Johnson v. Brewer & Pritchard, P.C.*,
    73 S.W.3d 193 (Tex. 2002)..........................................................................10, 11

*Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*,
    793 S.W.2d 660 (Tex. 1990)...........................................................................7

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
    160 S.W.2d 509 (Tex. 1942)..........................................................................10

*Leasehold Expense Recovery v. Mothers Work, Inc.*,
    331 F.3d 452 (5th Cir. 2003) ........................................................................20

*Meador v. Apple, Inc.*,
    911 F.3d 260 (5th Cir. 2018) ......................................................................3, 9

*MPI, Inc. v. Dupre*,
    596 S.W.2d 251 (Tex. Civ. App.—Fort Worth 1980, writ ref'd n.r.e.)...........12

*QBE Americas, Inc. v. Allen*,
    Nos. 22-cv-756 (JSR), 22-cv-757 (JSR), 2022 WL 889838 (S.D.N.Y. Mar. 24, 2022)......6

*ScaleFactor, Inc. v. Process Pro Consulting, LLC*
    394 F.Supp.3d 680 (W.D. Tex. 2019)............................................................10

*StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*,
    No. 4:17CV303, 2019 WL 4346538 (E.D. Tex. Sept. 12, 2019) ..................4, 5

*WeInfuse v. InfuseFlow, LLC*,
    No. 3:20-CV-1050-L, 2021 WL 1165132 (N.D. Tex. Mar. 26, 2021) ...........13, 14, 15, 17

*Williams v. Fed. Nat'l Mortg. Ass'n*,
    No. 2:11-CV-157-J, 2012 WL 443986 (N.D. Tex. Feb. 13, 2012)...................20

*Wooters v. Unitech International Inc.*,
    513 S.W.3d 754 (Tex. App.—Houston (1st Dist.) 2017, pet. denied)........11, 12

**STATUTES**

Defend Trade Secrets Act (18 U.S.C. § 1839)..................................................13, 16, 17

National Labor Relations Act (29 U.S.C. § 157)...............................................15, 16

Tex. Civ. Prac. & Rem. Code § 134A .................................................4, 13, 16, 17, 19

Defendants Howden Reinsurance Brokers Limited ("Howden UK") and Howden Reinsurance Brokers (US), Inc.[1] ("Howden US") (collectively ("Howden")) file this Brief in Support of their Motion to Dismiss Plaintiff Guy Carpenter & Company, LLC's ("Plaintiff" or "Guy Carpenter") Original Complaint and state as follows:

## I. SUMMARY

This lawsuit was filed by Plaintiff Guy Carpenter in an apparent attempt to compel a settlement from Howden to offset the cost of its own prior poor management decisions that resulted in its failure to retain valuable employees.  Michael Jameson ("Jameson"), Matthew Beard ("Beard"), Kenneth Durbin ("Durbin"), Kyle Goeke ("Goeke"), and Zachary Wilson ("Wilson") (collectively, the "Departing Employees") resigned from their positions at Guy Carpenter in April 2022 and accepted employment with Howden.  There was no non-compete or other restrictive covenants in place that prevented them from doing so.  Rather, the Departing Employees simply exercised their basic rights as at-will employees to improve the terms and conditions of their employment by joining Howden.  Nevertheless, Guy Carpenter asserts multiple specious claims against Howden in this litigation.  As is clear from the allegations in this lawsuits, and previous proceedings in Texas state court in which Guy Carpenter tried – and failed – to obtain the Departing Employees' depositions pre-suit,[2] there is no evidence that the Departing Employees

---

[1] Plaintiff named Howden Reinsurance Brokers (US) LLC as a defendant in this suit.  This entity converted to Howden Reinsurance Brokers (US), Inc. on July 29, 2022.

[2] In May 2022, Guy Carpenter filed 10 separate petitions in Texas state court seeking to depose the Departing Employees and others that recently resigned from Guy Carpenter to join Howden for the alleged purpose of investigating potential claims against such individuals and Howden.  The eight Dallas County petitions were consolidated in a single proceeding.  A court in Tarrant County and the Dallas County court presiding over the consolidated petitions both conducted full evidentiary hearings.  After hearing testimony from Guy Carpenter's representative in charge of investigating any potential claims, both the Tarrant County court and the Dallas County court determined that Guy Carpenter had not met its evidentiary burden of establishing that the benefit of investigating claims outweighed the burden.  Thus, each court denied Guy Carpenter's pre-suit deposition request.  The Tarrant County proceedings were styled *In re Petition of Guy Carpenter & Company, LLC*, Cause No. 017-333870-22 in the 17th Judicial District of Tarrant County, Texas.  The Dallas County proceedings were styled *In re Petition of Guy Carpenter & Company, LLC*, Cause No. DC-22-05543 in the 44th Judicial District of Dallas County, Texas.

have violated any obligations owed to Guy Carpenter or engaged in any tortious conduct.  Indeed, Guy Carpenter is fully aware that the Departing Employees returned all materials and confidential information upon resignation and, after a four-month investigation, has no evidence whatsoever that the Departing Employees have retained any Guy Carpenter property or solicited any clients or employees in violation of their post-employment non-solicit obligations.

Notably, however, the Departing Employees are not the defendants in this litigation.  Guy Carpenter has sued two Howden entities, one in the US and one in the UK.  In an effort to support its claims against Howden, Plaintiff substitutes manufactured outrage for factual allegations, complaining that Howden "raided" one of its business units and "directed" the Departing Employees to violate all manner of obligations to Guy Carpenter or "necessarily" participated in same.  Guy Carpenter's mischaracterization of Howden's lawful actions notwithstanding, nothing prohibited Howden from soliciting any one or more of Guy Carpenter's employees.  Indeed, Guy Carpenter, and its parent company Marsh McLennan, regularly hire large numbers of employees from its competitors, openly discussing it on investor calls and even doing so with respect to some of the Departing Employees when they were first hired at Guy Carpenter from a competitor.  While Guy Carpenter may be disappointed by the loss of its employees, the Departing Employees were not obligated to remain employed there and were lawfully allowed to discuss and explore competing employment opportunities, even before they resigned and without notifying Guy Carpenter of their intentions.

Given that the Departing Employees acted lawfully in considering and accepting employment with Howden, it is difficult to fathom how Guy Carpenter can sustain any claims whatsoever against Howden here.  Indeed, as described herein, Guy Carpenter's speculative and vague lawsuit fails to state any claims against Howden that can survive a motion to dismiss.

## II. LEGAL STANDARD

To avoid dismissal, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Causes of action that fail to meet this pleading standard are subject to a motion to dismiss. When considering a motion to dismiss, the Court must decide whether the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Computer Sciences Corp. v. Tata Consultancy Services Limited*, No. 3:19-cv-970-X(BH), 2020 WL 2487057 at *2 (N.D. Tex. February 7, 2020), *report and recommendation adopted*, 2020 WL 1428941 (N.D. Tex. Mar. 24, 2020). Labels, conclusions, and formulaic recitations of a cause of action's elements are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556. The alleged facts must "raise a right to relief above the speculative level." *Id.* at 555.

Further, a claim for relief may be foreclosed "on the basis of a dispositive issue of law." *Bridges v. Methodist Hospital*, No. 21-20311, 2022 WL 2116213 at *2 (5th Cir. June 13, 2022).

As described in more detail below, Plaintiff's pleading falls short of the pleading standards and, in some cases, asserts claims foreclosed by a dispositive issue of law. Guy Carpenter's claims against Howden should be summarily dismissed.

## III. ARGUMENTS AND AUTHORITIES

### A. Count 1 - Plaintiff's Tortious Interference Claims are Speculative and Fail as a Matter of Law

In Count 1, Plaintiff alleges that Howden tortiously interfered with contractual obligations the Departing Employees purportedly owe to Guy Carpenter. The claim is segmented into three

separate parts.  More specifically, Guy Carpenter alleges that Howden tortiously interfered with the Departing Employees' contractual obligations: 1) not to use or disclose Guy Carpenter's confidential information (Complaint ¶¶ 94, 99, 104, 107); 2) not to solicit Guy Carpenter employees (Complaint ¶¶ 97, 105); and 3) not to solicit certain Guy Carpenter clients (Complaint ¶¶ 98, 106).  Each portion of this claim is subject to dismissal as detailed below.

> **1.    TUTSA preempts Plaintiff's tortious interference claim relating to Howden's alleged interference with the Departing Employees' contractual obligations to not use/disclose, and to return, Guy Carpenter's confidential business information.**

The initial portion of Guy Carpenter's tortious interference claim against Howden is based on its allegations that "[a]t the encouragement and for the benefit of [Howden UK] and Howden US, the Departing Senior Employees breached the Agreements by providing [Howden UK] (before their termination at Guy Carpenter) and Howden US (after their termination at Guy Carpenter) with Guy Carpenter's confidential information…."  Complaint ¶ 96; *see also* ¶ 104 (similar quote but relating to different agreements).  Plaintiff further alleges that Howden tortiously interfered with provisions in the agreements requiring the return of Guy Carpenter property upon separation from employment by encouraging the Departing Employees to retain Guy Carpenter's confidential information after termination.  Complaint ¶¶ 99, 107.

This claim is preempted by the Texas Uniform Trade Secrets Act ("TUTSA").  TUTSA's preemption provision makes it clear that TUTSA is intended to displace common law tort claims.  Tex. Civ. Prac. & Rem. Code § 134A.007.  Courts construe the preemption provision to not only preempt common law tort claims based on information that rises to the level of a "trade secret" as defined by TUTSA but also any tort claim premised on the misappropriation of confidential business information (whether or not such information could technically qualify as a "trade secret").  *See, e.g.*, *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, No. 4:17CV303, 2019

WL 4346538 at *337 (E.D. Tex. Sept. 12, 2019) (finding that TUTSA preempts tort claims based on the unauthorized use of business information whether a trade secret or not); *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444-RP, 2018 WL 315753 at *3 (W.D. Tex. Jan. 5, 2018) ("TUTSA's preemption provision encompasses all claims based on the alleged improper taking of confidential business information").

As the Complaint's description of the tortious interference cause of action makes clear, Guy Carpenter partially bases this claim against Howden on misappropriation of confidential business information.  To such extent, Guy Carpenter's tortious interference claim is preempted by TUTSA.  *StoneCoat of Texas, LLC,* 2019 WL 4346538 at *339 (holding that a tortious interference with contract claim was preempted by TUTSA when the basis of the claim was the defendant's alleged interference with a contractual obligation not to use or disclose confidential business information).

### 2. Plaintiff's claims of tortious interference relating to Howden's alleged interference with the Departing Employees' contractual obligations not to solicit Guy Carpenter employees fail for lack of a valid contractual obligation.

The second part of Plaintiff's tortious interference claim relates to Howden's alleged interference with the Departing Employees' contractual obligation not to solicit Guy Carpenter employees.  Complaint ¶¶ 97, 105.  For there to be a valid claim against Howden for interfering with the Departing Employees' employee non-solicit obligations, there must first be valid employee non-solicit obligations.  As described in the Complaint, there are two sets of contracts that seek to prohibit certain solicitation activities by the Departing Employees.  The first contract is the Notification, Non-Solicitation and Confidentiality Agreement ("NNCA").  The employee non-solicitation provision in the NNCA, located in the "Non-Solicitation of Company Business and Employees" section, expressly covers *only post-termination* activities of the Departing Employees.  *See* Complaint Ex. A, § 2(a) ("Employee agrees that if his/her employment with the

Company terminates for any reason…s/he will not, ***for a period of one (1) year from date of termination***, …ii. solicit, induce, or encourage…any employee of the Company…to terminate his or her employment with the Company…for any reason.") (emphasis added).[3]  Given the express language of the NNCA, it is impossible for Howden to have interfered with any contractual obligation on the Departing Employees not to solicit Guy Carpenter employees in the pre-termination timeframe because no such obligation exists under the NNCA.

The second contract is the Restrictive Covenants Agreement ("RCA") that Jameson, Durbin, Beard, and Wilson allegedly accepted as part of a transaction in which they received shares in Guy Carpenter's parent company.  Complaint ¶ 37.  The RCA includes a prohibition on employee solicitation prior to termination.  Ex. Complaint J, § 3.  However, the RCA is governed by New York law.  Ex. Complaint J, § 13.  Under New York law any employee non-solicitation provision that seeks to restrain at-will employees from soliciting one another before accepting another offer of employment is unenforceable because it is anticompetitive and contrary to public policy.  *See*, *e.g.*, *In re Document Techs. Litigation*, 275 F. Supp. 3d 454, 466 (S.D.N.Y. 2017) ("This restrictive covenant is, however, unenforceable insofar as it purports to prohibit at-will employees, who have yet to accept an offer of new employment, from 'inducing' or even 'encouraging' their coworkers to leave their present employer."); *see also QBE Americas, Inc. v. Allen*, Nos. 22-cv-756 (JSR), 22-cv-757 (JSR), 2022 WL 889838 at *11 (S.D.N.Y. Mar. 24, 2022) (same and noting that if an employer desires to bind employees to employment for a specified period of time they should use a term employment agreement, rather than seeking the benefits of a term agreement via a restrictive covenant).  Therefore, under the governing New York law, the

---

[3] This cite is to the NNCA executed by Jameson.  The NNCA obligations for the other four Departing Employees are substantially similar.

RCA's provision purporting to prohibit Jameson, Durbin, Beard, and Wilson from employee solicitation prior to the time they accept a new offer of employment is unenforceable.

To prove a tortious interference with contract claim, there must be a "valid" contract. *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660, 664 (Tex. 1990). A contract is not "valid" if it is void, illegal, or if there is any public policy opposing its performance. *Id.* at 664-665. Overbroad restrictive covenants are unenforceable on grounds of public policy and cannot form the basis of an action for tortious interference. *Id.* at 665. Given the RCA's unenforceability based on public policy, it is not a valid contract and therefore no tortious interference claim can be based on the RCA's prohibition of employee solicitation prior to Jameson, Beard, Durbin, or Wilson accepting an offer of employment with Howden.

Guy Carpenter's claim for tortious interference with the Departing Employees' contractual employee non-solicitation obligation therefore must be dismissed to the extent that it relies on any activities of the Departing Employees prior to the time they accepted Howden's employment offer.[4]

> **3.    Plaintiff's claims of tortious interference relating to Howden's alleged interference with the Departing Employees' contractual obligations not to solicit certain Guy Carpenter clients fail because the allegations are rank speculation unsupported by any factual allegation.**

The final part of Plaintiff's tortious interference claim against Howden relates to NNCA and RCA provisions that seek to prohibit solicitation of certain Guy Carpenter clients. Attempting to state a claim, Plaintiff asserts in various places throughout the Complaint that the Departing Employees began soliciting Guy Carpenter clients prior to their termination date and continuing

---

[4] The only allegation that any of the Departing Employees have solicited Guy Carpenter employees post-offer is contained in Complaint Paragraphs 85 and 86. Plaintiff alleges that Howden used Jameson to call a current Guy Carpenter employee on June 9. However, based on the Complaint's description of the individual as a "current" Guy Carpenter employee, it is clear that, even if accurate, this attempt to solicit such employee failed. Plaintiff does not allege in any way how it has been damaged by such failed attempt. Therefore, Guy Carpenter also states no employee solicitation claims that can survive dismissal.

through today.  *See, e.g.*, Complaint ¶ 82, 87.  These statements, however, are unsupported by any factual allegations in the Complaint and are no more than pure speculation, especially as it relates to Howden UK and Howden US, the only defendants in this lawsuit.  Rather than provide any specific factual allegations regarding Howden's involvement in any alleged solicitation, Plaintiff vaguely references "clients" that have moved business to Howden since the Departing Employees resigned from Guy Carpenter or have indicated they may move business to Howden, and then it assumes the Departing Employees must have solicited such business and Howden must have been involved.  *See* Complaint ¶¶ 59, 60, 61, 87, 88.  The incredible lack of specificity in the statements appears calculated.  Plaintiff understands it must include some allegations in support of its tortious interference claim but also cannot outright misrepresent that it has actual facts upon which to base such a claim.  Despite Plaintiff's efforts, it cannot simply rely on vague, speculative statements in the face of a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. at 678 (requiring pleadings to establish more than a "sheer possibility" of unlawful activity); *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (holding that the allegations must raise a right to relief above the speculative level).

Further, the NNCA and RCA restrictive covenants only apply to certain clients and each Departing Employee has a different set of clients that they are prohibited from soliciting.  The NNCA restriction only relates to clients, former clients, and prospects that the employee solicited or serviced within the 2-year period prior to the termination of the employee's employment.  *See* Complaint Ex. A, § 2(a)(i).  The RCA restriction only relates to clients and prospective clients that the employee had contact with or about whom the employee received confidential information.  *See* Complaint Ex. J, § 2(b).  As stated above, whether the NNCA's and RCA's prohibitions on customer contact are enforceable will be governed by New York law.  New York law makes clear that customer non-solicit agreements will not be enforced with respect to customers developed by

an individual through the individual's own efforts outside of the employment.  *24 SEVEN, LLC v. Martinez*, No. 19-cv-7320 (VSB), 2021 WL 276654 at *15 (S.D.N.Y. Jan, 26, 2021) (upholding denial of injunction on the basis that customer non-solicit was overbroad and stating that covenant must be narrowly tailored to avoid including customers that the employee developed outside the context of this specific employment); *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (1999) (stating that the plaintiff did not have a reasonable interest in extending a restrictive covenant to "personal clients of defendant who came to the firm solely to avail themselves of his services and only as a result of his own independent recruitment efforts").  To adequately state a claim here, the Complaint would need to contain allegations regarding the specific clients, the fact that such client falls within the definitions in the NNCA/RCA for a specific Departing Employee, that the Departing Employee only developed such client through his employment with Guy Carpenter, and that Howden interfered with the contractual obligation of such Departing Employee not to solicit that client.

The Complaint's failure to make any allegations which, in any way, would allow the Court to infer that Howden interfered with any specific Departing Employee's obligations not to solicit a specific client he was validly contractually prohibited from soliciting is another reason why this portion of Plaintiff's claim fails.  *Meador v. Apple, Inc.*, 911 F.3d at 264 (holding that the complaint allegations must allow the Court to infer that the defendant is liable).

**B.      *Count 2 - Plaintiff Fails to State a Knowing Participation in Breach of Fiduciary Duty Claim***

In Count 2 of the Complaint, Plaintiff brings a knowing participation in breach of fiduciary duty claim against Howden.  The claim alleges that Howden participated in the Departing Employees' breach of two purported fiduciary duties: 1) the duty not to solicit employees; and 2)

the duty not to misappropriate Guy Carpenter business opportunities.[5]   Complaint ¶ 113.   A knowing participation claim is a derivative claim, requiring an underlying breach of fiduciary duty in which the defendant participates.   *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942).   As Plaintiff fails to sufficiently allege that the Departing Employees breached any fiduciary duties, its derivative claim against Howden also fails as set forth below.

### 1. Plaintiff's Complaint largely describes a group of employees lawfully exercising their right to explore potential employment with a competitor – not any breaches of fiduciary duty.

Plaintiff alleges that the Departing Employees breached fiduciary duties they owed to Guy Carpenter by virtue of their employment relationship.   Complaint ¶ 113.   The fiduciary duties that arise from the employment relationship are not as robust as those that arise out of traditional fiduciary relationships.   As Fifth Circuit and Texas precedent makes clear, at-will employees do not owe fiduciary duties to their employers that require them to, at all times, put the interests of their employer above their own.   *D'Onofrio v. Vacation Publications*, 888 F.3d 197, 216 (5th Cir. 2018); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 201 (Tex. 2002).   Any duties owed by an employee to an employer are "tempered by society's legitimate interest in encouraging competition."   *Johnson*, 73 S.W.3d at 201.   Therefore, among other things, employees may properly make plans to go into competition with their employer, may take active steps to do so while still employed, may withhold such plans from their employer, and may secretly join with other employees to make such plans, all without violating any duty owed to an employer.   *Id.*; *see*

---

[5] The Complaint does not appear to base its knowing participation claim on any alleged participation by Howden in the Departing Employees' fiduciary duty not to misuse or disclose Guy Carpenter information.  However, to the extent that Guy Carpenter is contending that the Departing Employees breached such fiduciary obligation and Howden knowingly participated in this breach, this claim would be preempted by TUTSA.  *ScaleFactor, Inc. v. Process Pro Consulting, LLC*, 394 F.Supp.3d 680, 685 (W.D. Tex. 2019) (holding that breach of fiduciary duty claim is preempted by TUTSA to the extent it is based on misappropriation of the plaintiff's confidential business information).

*also*, *D'Onofrio*, 888 F.3d at 216; *Wooters v. Unitech International Inc.*, 513 S.W.3d 754, 762 (Tex. App.—Houston (1st Dist.) 2017, pet. denied).

The vast majority of Plaintiff's Complaint describes a group of employees at Guy Carpenter exploring an alternative employment opportunity with Howden. Plaintiff attempts to cast this as something nefarious but struggles mightily.[6] This is due to the simple fact that these employees were at-will employees of Guy Carpenter that were merely exercising their most basic right to improve their employment situation by looking elsewhere.

The failure of Guy Carpenter to state a claim is further revealed by the fact that Howden is the actual defendant here, not the Departing Employees. To be clear, Howden had no obligation whatsoever to refrain from soliciting Guy Carpenter's employees. Even taking the Complaint allegations as true, Howden was not prohibited from taking the actions about which Plaintiff complains, including talking to Guy Carpenter employees, interviewing Guy Carpenter employees, flying them to meetings to discuss the potential opportunity, making offers of employment, and hiring Guy Carpenter employees. To the extent Howden could be described as "knowingly participating in" activities engaged in by the Departing Employees, Howden was simply involved, by virtue of being the potential alternative employment opportunity, with a group of at-will employees exploring and preparing to accept potential new employment with a competitor. The limited fiduciary duties owed by employees to their employers do not prohibit such activities, and, as such, Howden cannot be found to have knowingly participated in any breach of fiduciary duties. *Johnson*, 73 S.W.3d at 201 (describing an employee's fiduciary duties as limited and stating that employees can secretly join together to plan to compete with their current

---

[6] Not to mention that Guy Carpenter's feigned outrage at the fact that some of their employees left for a competitor rings especially hollow given its proclivity to regularly hire large groups of employees from its competitors. Indeed, some of the employees that left for Howden were part of a group Guy Carpenter hired from a competitor.

employer without violating any fiduciary duties), *see also*, *D'Onofrio*, 888 F.3d at 216; *Wooters v. Unitech International Inc.*, 513 S.W.3d at 762.

    **2.**    **Plaintiff's Complaint allegations that Howden participated in any activities by the Departing Employees to misappropriate Guy Carpenter business opportunities are rank speculation unsupported by any factual allegation.**

While employees can prepare to compete with their employer, they are not able to usurp their employer's business opportunities prior to leaving their employer's employ. *MPI, Inc. v. Dupre*, 596 S.W.2d 251, 254 (Tex. Civ. App.—Fort Worth 1980, writ ref'd n.r.e.) ("It is only when an employee uses his official position to gain a business opportunity which belongs to his employer or when he actually competes for customers while still employed that a legal wrong will have accrued."). As stated above with respect to tortious interference, Plaintiff attempts to state a claim by including exceedingly vague, conclusory allegations that the Departing Employees began soliciting clients prior to their termination date and that Howden must have been involved based solely on the fact that some clients have voluntarily chosen to move their business to Howden. *See* Complaint ¶¶ 59, 60, 61. Plaintiff, however, cannot simply rely on vague, speculative statements in the face of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. at 678 (requiring pleadings to establish more than a "sheer possibility" of unlawful activity); *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (holding that the allegations must raise a right to relief above the speculative level).

**C.**    *Counts 3 and 4 – Plaintiff Fails to State its TUTSA/DTSA Claims*

In Counts 3 and 4 of the Complaint, Plaintiff claims that Howden misappropriated Guy Carpenter trade secrets in violation of the Defend Trade Secrets Act ("DTSA") and TUTSA. Complaint ¶¶ 118-143. Its allegations, however, fall far short of stating a claim that can survive a motion to dismiss.

To properly state a claim of trade secret misappropriation under the DTSA or TUTSA, Plaintiff must, at a minimum, set forth sufficient allegations that: 1) the information alleged to

have been misappropriated can qualify as a trade secret in that it derives value from not being generally known or readily ascertainable; and 2) it has taken reasonable measures to preserve the secrecy of the alleged trade secret information.  18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(6); *WeInfuse v. InfuseFlow, LLC*, No. 3:20-CV-1050-L, 2021 WL 1165132 at *3-4 (N.D. Tex. Mar. 26, 2021) (explaining that a complaint must sufficiently allege facts which identify the trade secret information and how such information qualifies as a trade secret as statutorily defined).  Guy Carpenter must also sufficiently allege that the trade secret information has been "misappropriated."  18 U.S.C. § 1839(5); Tex. Civ. Prac. & Rem. Code § 134A.002(3). Plaintiff wholly fails to comply with all three of these pleading requirements.

1.    **Plaintiff fails to identify the trade secret information allegedly misappropriated.**

Despite its lengthy Complaint, nowhere does Guy Carpenter identify any particular trade secret information that it claims Howden received from the Departing Employees.  Rather, Guy Carpenter generally describes the information allegedly taken by the Departing Employees as "confidential" as opposed to "trade secret" information.  *See*, *e.g.*, Complaint ¶¶ 47, 63-66.  By so doing, Plaintiff has confused the issue and fails to sufficiently identify what information pertains to its trade secret claims.

Even assuming Plaintiff intends to argue that all of its confidential information constitutes trade secret information, Plaintiff still fails to state its claim specifically.  In some cases, Guy Carpenter simply discusses information without identifying what information is at issue.  *See* Complaint ¶ 63 ("Jameson accessed the cloud storage application DropBox on his work computer, where on information and belief, Jameson exfiltrated confidential Guy Carpenter information…"); *see Computer Sciences Corp. v. Tata Consultancy Services Ltd.*, 2020 WL 2487057 at *4 (explaining that the complaint must plead sufficient facts to put the defendant on notice of what is

alleged to have been misappropriated). Other times, there is a minimal effort to identify the subject information, but only with the generic labels of "personnel" or "client" information. *See* Complaint ¶ 7 (complaining that Howden must have necessarily used "Guy Carpenter's confidential information and trade secrets, including but not limited to, personnel information and sensitive client data…"). These vague and generic descriptions of the subject information are too broad to save Plaintiff's DTSA and TUTSA claims from dismissal. The *WeInfuse* case is instructive on this point. The complaint in *WeInfuse* described a software program that was allegedly misappropriated by the defendant and asserted "every aspect" of the software program was trade secret information, including its "functionalities, user interface, display and design, interworkings of various components and modules, logic flows, databases, and schema." *WeInfuse, LLC v. InfuseFlow, LLC*, 2021 WL 1165132 at *3. The *WeInfuse* court stated, "these descriptions and offerings are far too broad to qualify as trade secrets" and without further specifics, "the court cannot reasonably infer that the Software's features and functionalities are not generally known within the industry or readily ascertainable." *Id.* The court dismissed the complaint. *Id.* at *4. Similarly, here, Plaintiff's generic references to "personnel" and "client" information are insufficient to allow the Court to reasonably infer that such information qualifies as trade secrets.

Where Plaintiff attempts to be specific in its Complaint, it identifies items that clearly ***are not*** trade secrets. For example:

- Complaint ¶ 56: Guy Carpenter complains that certain employees revealed to Howden the reasons that another employee might wish to stay at Guy Carpenter. There is no basis to suggest that an individual's personal reasons for wishing to stay in their current job position is a trade secret belonging to his or her employer (in this case, Guy Carpenter).

- Complaint ¶¶ 47, 57: Guy Carpenter complains that certain employees allegedly revealed contact and compensation information of other employees to Howden to

aid in solicitation efforts.  An employee's personal contact information is not a trade secret belonging to Guy Carpenter.  Further, compensation information is classically a category of information that the National Labor Relations Act ("NLRA") states employees are free to discuss and, thus, it is readily ascertainable, *i.e.*, not trade secret information.  29 U.S.C. § 157; *Flex Frac Logistics, LLC v. NLRB*, 746 F.3d 205, 208-209 (5th Cir. 2014).

Even Plaintiff's allegations that the Departing Employees provided Howden with information regarding the identity of Guy Carpenter's clients and their reinsurance needs are insufficient to describe trade secret information upon which Plaintiff's DTSA and TUTSA claims can stand.  As Guy Carpenter is most certainly aware, information cannot qualify as a trade secret if it is readily ascertainable through proper means.  In *Guy Carpenter & Co., Inc. v. Provenzale*, the Fifth Circuit found that information regarding the identity of Guy Carpenter's clients and the nature of the products such clients purchase from Guy Carpenter cannot be trade secret information.  334 F.3d 459, 468 (5th Cir. 2003).  Although the Fifth Circuit recognized that Guy Carpenter attempted to protect such information, it held that the information cannot qualify as a trade secret if it is readily ascertainable and "participants in the reinsurance market freely disclose the identity of their reinsurance broker and the nature of the reinsurance products they regularly consume."  *Id.*  Guy Carpenter's Complaint does not provide any detail regarding whether there is any client information at issue here that is not readily ascertainable.  Therefore, Plaintiff fails to provide sufficient identification of any information that would allow the Court to infer that it can establish a DTSA or TUTSA claim.  *WeInfuse, LLC v. InfuseFlow, LLC*, 2021 WL 1165132 at *3 (requiring specific detail allowing the court to infer that the information at issue was not readily ascertainable).

## 2.    Plaintiff fails to allege reasonable efforts to protect its information.

To sufficiently state a DTSA or TUTSA claim that can survive a motion to dismiss, Plaintiff must also satisfy its burden to allege that it has taken reasonable measures to keep the

information at issue a secret.  18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(6).  Plaintiff fails to do so.

Initially, Plaintiff merely states that it "has made significant efforts to ensure that employees and former employees do not use or disseminate confidential information or trade secrets for the benefit of competitors."  Complaint ¶ 26.  This is simply a recitation of the required element, not a factual allegation which allows the Court to draw an inference that Guy Carpenter can establish its claim.  *Computer Sciences Corp. v. Tata Consultancy Services Limited*, 2020 WL 2487057 at * 2 (stating that a formulaic recitation of the elements is insufficient to defeat a motion to dismiss).

Plaintiff's only other effort to include factual statements regarding measures it took to protect its information is its allegation that Guy Carpenter requires employees to enter into agreements containing confidentiality provisions.  Complaint ¶ 27.  This too is insufficient to show that it took reasonable steps to protect the information at issue, *i.e.*, "personnel" and "client" information.

With respect to "personnel" information, any rules prohibiting employees from discussing their terms and conditions of employment, including their compensation information, are violations of Section 8(a)(1) of the NLRA.  *Flex Frac Logistics, LLC v. NLRB*, 746 F.3d 205, 208-209 (5th Cir. 2014).  Therefore, whatever Guy Carpenter's efforts are to include personnel information in the definitions of "Confidential Information" set out in its employee agreements are unenforceable and cannot be relied upon as measures to protect trade secrets.

With respect to "client" information, Plaintiff's references to the employee agreements may show that Guy Carpenter engaged in some effort to protect the secrecy of its client information on the employee side, but employees are not the only persons who may have such information.

"Client" information is also clearly known by Guy Carpenter's clients. There are no allegations whatsoever in the Complaint that Guy Carpenter engaged in any efforts to protect the secrecy of the "client" information on the client side. *WeInfuse* is again instructive. The plaintiff's complaint there detailed all the efforts engaged in to protect the secrecy of its software from both the employee and current client perspectives. *WeInfuse, LLC v. InfuseFlow, LLC*, 2021 WL 1165132 at *4. However, the complaint discussed the process of pitching the software to prospective clients and failed to allege that there were any measures taken to protect the secrecy of the software during such pitches. *Id.* The court found that the plaintiff, therefore, failed to adequately allege that it reasonably protected its information. *Id.* Plaintiff similarly fails to set forth any allegations that it requires clients to keep this information secret.

### 3.    Plaintiff fails to sufficiently allege that Howden misappropriated any Guy Carpenter information.

Finally, Plaintiff fails to set forth adequate allegations of misappropriation as required to survive dismissal at this juncture. 18 U.S.C. § 1839(5); Tex. Civ. Prac. & Rem. Code § 134A.002(3). Guy Carpenter admits that its theory of misappropriation is based on its unsubstantiated belief that any solicitation "necessarily" involved the use of its information. Complaint ¶ 48. Guy Carpenter does not explain why this must "necessarily" be the case and nowhere does the Complaint include any specific allegations of actual misappropriation by the Departing Employees – much less Howden UK or Howden US, the defendants in this action.

Plaintiff's only attempts to allege misappropriation occur in a series of paragraphs that do no more than describe employees performing their jobs for Guy Carpenter:

- Complaint ¶ 63: Plaintiff alleges that Jameson accessed DropBox which is an online cloud application commonly used to share documents between two or more parties – for example, a Guy Carpenter employee and its client. While Guy Carpenter generically states that this is "misappropriation," it does not explain how Jameson "accessing" DropBox resulted in any misappropriation especially given the fact that DropBox is commonly used for legitimate business purposes.

- Complaint ¶ 64:  Plaintiff alleges that, while an employee and performing his duties for Guy Carpenter, Durbin accessed and reviewed Guy Carpenter files.  Beyond using the label of "misappropriation," Guy Carpenter does not make any allegation which details Durbin's alleged misappropriation.

- Complaint ¶ 65:  Plaintiff alleges that Durbin attempted to forward information to himself.  Guy Carpenter fails to allege what information he allegedly attempted to forward to himself (it was his personal W-2).  Nevertheless, the allegation itself established that Durbin failed in this attempt.

- Complaint ¶ 66:  Plaintiff alleges that, while an employee and performing his duties for Guy Carpenter, Beard accessed and reviewed Guy Carpenter files.  Other than stating that Beard was apparently doing his job and engaged in this unsurprising activity, Guy Carpenter does not even allege that Beard misappropriated any information.

The above allegations establish only that these individuals utilized or accessed Guy Carpenter information while employed by Guy Carpenter – not that they misappropriated the information and certainly not that Howden had any involvement.  Guy Carpenter's rank speculation that they were misappropriating the information and giving it to Howden provides nothing to support the elements of a claim under the DTSA or TUTSA.  Of course, Plaintiff has full access to the Guy Carpenter devices that these individuals utilized to engage in the above-described activities and has had over four months to investigate them.  Nevertheless, there are no factual allegations in the Complaint supporting a misappropriation claim.  Plaintiff simply fails to plead in a manner sufficient to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. at 678 (requiring pleadings to establish more than a "sheer possibility" of unlawful activity); *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (holding that the allegations must raise a right to relief above the speculative level).

## D.     *Count 5 - Plaintiff's Civil Conspiracy Claims Fail as a Matter of Law (Count 5)*

Plaintiff brings a civil conspiracy claim as Count 5 of the Complaint.  Plaintiff states that the alleged conspiracy between Howden and the Departing Employees had three objectives: 1) misappropriating Guy Carpenter's confidential business information; 2) breaching the Departing Employees' fiduciary duties; and 3) tortiously interfering with the Departing Employees'

contractual obligations.  Complaint ¶ 146.  All three parts of Plaintiff's conspiracy claim fail for the reasons set forth below.

> **1.     Plaintiff's conspiracy claim relating to Howden and the Departing Employees' alleged conspiracy to misappropriate Guy Carpenter's confidential business information is preempted by TUTSA.**

Part of Guy Carpenter's civil conspiracy claim alleges that Howden and the Departing Employees were "parties to an unlawful combination and conspiracy" to "misappropriat[e] Guy Carpenter confidential and trade secret information in violation of state and federal law." Complaint ¶ 145, 146.  Plaintiff further alleges that Howden and the Departing Employees knew that the misappropriation of Guy Carpenter's confidential and trade secret information was unlawful and committed unlawful acts in furtherance of the conspiracy by misappropriating Guy Carpenter's confidential and trade secret information.  Complaint ¶¶ 149, 151.

As stated above, TUTSA's preemption provision displaces common law tort claims related to the misappropriation of confidential business information.  Tex. Civ. Prac. & Rem. Code § 134A; *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, 2018 WL 315753 at *3 ("TUTSA's preemption provision encompasses all claims based on the alleged improper taking of confidential business information").

This preemption provision applies to civil conspiracy claims where the allegations relate to a conspiracy to misappropriate confidential business information.  *Computer Sciences Corp. v. Tata Consultancy Services Limited*, 2020 WL 2487057 at *7-8 (holding civil conspiracy claim was preempted by TUTSA when the plaintiff alleged that the defendants conspired to misappropriate plaintiff's trade secrets and confidential information).  Therefore, the portion of Plaintiff's civil conspiracy claim related to the alleged conspiracy to misappropriate Guy Carpenter business information should be dismissed as preempted by TUTSA.

2.    **Plaintiff's conspiracy claim relating to Howden and the Departing Employees' alleged conspiracy to breach fiduciary duties fails due to the underlying tort failing.**

Civil conspiracy is not an independent tort.  Rather, a plaintiff must show some tortious act committed by a co-conspirator pursuant to the conspiracy.  *Adidas America Inc. v. Shoebacca Ltd.*, No. 3:20-CV-03248-N, 2021 WL 4399745 at *3 (N.D. Tex. Sept. 27, 2021).  Plaintiff states that one of the three objectives of the alleged conspiracy between Howden and the Departing Employees was to breach the Departing Employees' fiduciary duties.  Complaint ¶ 146, 148. However, for the same reasons as stated above, Plaintiff fails to plead any facts that would allow the Court to infer that the Departing Employees breached any fiduciary duties.  Without this underlying tort, Plaintiff cannot state a claim against Howden for conspiracy to breach fiduciary duties.  *Id.* at *4 (holding that because the underlying tort was properly dismissed, the conspiracy claim related to such tort should also be dismissed).

3.    **Plaintiff's conspiracy claim relating to Howden and the Departing Employees' alleged conspiracy to tortiously interfere with contracts fails due to the fact that it is legally impossible for these parties to conspire to tortiously interfere with a contract to which the Departing Employees are a party.**

Finally, Guy Carpenter alleges that the final objective of the purported conspiracy is that Howden and the Departing Employees conspired to tortiously interfere with the Departing Employees' NNCA and RCA contracts.  Complaint ¶ 146, 148.  It is axiomatic that a party cannot tortiously interfere with its own contract.  *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995) (stating there is a "logically necessary rule that a party cannot tortiously interfere with its own contract").  It is also true that there is no cause of action for conspiracy to breach a contract. *Leasehold Expense Recovery v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003); *Williams v. Fed. Nat'l Mortg. Ass'n*, No. 2:11-CV-157-J, 2012 WL 443986 at *4 (N.D. Tex. Feb. 13, 2012) ("Conspiracy for breach of contract is not actionable under Texas law").  Therefore, it follows that

there can be no cause of action for conspiracy to tortiously interfere with a contract to which a party to the conspiracy is itself a party.  Yet, Plaintiff's allegations are that the Departing Employees conspired with Howden to tortiously interfere with their own NNCA and RCA contracts.  This part of the claim must be dismissed.

4.    **The entirety of Plaintiff's conspiracy claim fails due to the fact that there is no claim for conspiracy between a principal and its agents.**

Under Texas law, a corporation cannot conspire with its agents.  *Aguilar v. State Farm Lloyds*, No. 4:15-cv-565-A, 2015 WL 5714654 at *3 (N.D. Tex. Sept. 28, 2015) ("A conspiracy between a corporation and its agent can exist only where the agent is acting outside the scope of his employment for his own personal benefit.").  Plaintiff's allegations in the Complaint make it clear that it believed the Departing Employees were acting as the agents of Howden and working for Howden's benefit when they engaged in the complained of conduct supporting its conspiracy claim.  *See*, *e.g.*, Complaint ¶¶ 3, 7, 44-47, 50, 53-57.  As such, any claim of conspiracy between Howden and the Departing Employees fails.

### IV.  PRAYER

For the reasons set forth above and in the Motion to Dismiss, Plaintiff fails to state claims against Howden upon which relief may be granted.  Howden respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiff's claims in their entirety.  Howden further requests all such other relief to which it has shown itself entitled.

Respectfully Submitted,

/s/ Ann Marie Arcadi
Ann Marie Arcadi
State Bar No. 00786994
annmarie.arcadi@arcadijackson.com
T. Gregory Jackson
State Bar No. 24004718
greg.jackson@arcadijackson.com
John M. Farrell
State Bar No. 24059735
john.farrell@arcadijackson.com

ARCADI JACKSON, LLP
2911 Turtle Creek Blvd., Suite 800
Dallas, Texas 75219
Telephone: 214-865-6458
Facsimile: 214-865-6522

**ATTORNEYS FOR DEFENDANTS
HOWDEN REINSURANCE BROKERS
LIMITED AND HOWDEN REINSURANCE
BROKERS (US), INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of September, 2022, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Karl G. Nelson
KNelson@gibsondunn.com
Collin D. Ray
CDRay@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: 214-698-3100
Facsimile: 214-571-2900

/s/ John M. Farrell
John M. Farrell